# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**WALTER PAGE NOE,**

    Plaintiff,

v.                                              **Civil Action No. 3:10-CV-36 (BAILEY)**

**STATE OF WEST VIRGINIA,**
**JOE MANCHIN** *as chief executive*,
**SUMMIT INVESTMENT GROUP, et al.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court are Defendant State of West Virginia's Motion to Dismiss [Doc. 9], filed May 26, 2010, and the plaintiff's Motion to Proceed [Doc. 15], filed June 24, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's motion to dismiss should be **GRANTED**, and the plaintiff's motion to proceed should be **DENIED**.

## BACKGROUND

### I. Factual Allegations

The plaintiff, Walter Page Noe, alleges the following facts in the challenged Complaint [Doc. 1]. The plaintiff, a 62-year-old Vietnam veteran, has been unemployed since 2008. (Id. at ¶¶ 1-3). Previously, from September 2007 to December 2007, the plaintiff was employed as a salesman for a land development company, a position that the plaintiff claims required no real estate license. (Id. at ¶ 4). In December 2007, the plaintiff's employer terminated his employment in part because the position began requiring a real

estate license. (Id. at ¶ 6). The plaintiff next gained employment in January 2008 as general manager of a Virginia construction firm. (Id. at ¶ 9). However, when the firm began to have financial difficulties, the plaintiff was not paid according to his employment agreement. (Id.). As a result, the plaintiff sued the firm in this Court and reached a settlement for partial payment of his services. (Id. at ¶¶ 10-11).

Thereafter, the plaintiff filed for unemployment benefits and was awarded a benefit amount of $182.00, to be paid biweekly. (Id. at ¶ 12). More specifically, the plaintiff's employment checks were to be drawn from Branch Banking and Trust ("BB&T"), though there were no branches near his residence in Hampshire County, West Virginia. (Id. at ¶ 14). Also, because the plaintiff had no account with BB&T, he found it easier to cash his unemployment checks at Wal-Mart or the BB&T in Winchester, Virginia, or Moorefield, West Virginia. (Id. at ¶ 15). Each time, the plaintiff incurred $15.00 to $18.00 in fuel costs and $3.00 to $5.00 in check-cashing fees. (Id.).

During his unemployment, the plaintiff has sought various business opportunities, but, due to the lack of funding, the plaintiff has been unable to fully pursue these opportunities. (Id. at ¶ 17). For example, the plaintiff has long had an interest in solar-powered heating and cooling systems. (Id. at ¶ 18). However, the plaintiff has been unable to procure funds for start-up costs. (Id.). On one occasion, the plaintiff sought funds from the West Virginia Small Business Development Center, which offered the plaintiff a packaged folder with tax applications and other information but no financial assistance. (Id. at ¶¶ 20-21). The plaintiff has sought financing through numerous banks, but he was repeatedly informed that, due to his poor credit rating and lack of employment, no loan could be offered. (Id. at ¶ 28). The plaintiff then attempted to return to the real estate

business, but he could not afford to pay the fees necessary to obtain a real estate license. (Id. at ¶ 32).

Finally, the plaintiff negotiated a contract to purchase more than 300 acres of real property near the Blackwater Falls State Park in Tucker County, West Virginia, from 300N, LLC, for a purchase price of $1.5 million. (Id. at ¶ 37). The plaintiff plans to use the land to "build and operate an international community and campground . . .." (Id.). The plaintiff estimates that a loan of $12 million will be necessary to implement his plan. (Id. at ¶ 38). However, due to the regulations placed on the banks of West Virginia, the plaintiff has been "unable to obtain funds in a timely manner to carry out said contract and to implement said business plan . . .." (Id. at ¶ 40).

II.     **Procedural History**

On March 30, 2010, the plaintiff brought suit in the United States District Court for the Northern District of West Virginia, against the State of West Virginia and the Summit Investment Group. The plaintiff seeks one billion dollars in damages from each defendant as well as an award of punitive damages. ([Doc. 1] at 6). The plaintiff also requests various forms of injunctive relief, including, *inter alia*: (1) ordering the governor of the State of West Virginia, and the State's legislature, to "implement an immediate review of all agencies, bureaus, and commissions, with regard to redefining their proper role in providing services to its citizens . . .."; and (2) ordering the State of West Virginia to "review and abandon all contracts made with any group, union, church, or any other institution, corporation, or individual, to the detriment of the citizens of the state of West Virginia through any collective bargaining agreements, or any contracts made without regard to open bidding process . . .." (Id. at 5-6). Also on March 30, 2010, the plaintiff filed a Motion

for Leave to Proceed *In Forma Pauperis* [Doc. 2], which this Court granted on April 29, 2010 [Doc. 5].

On May 26, 2010, the State of West Virginia filed the pending Motion to Dismiss [Doc. 9] on behalf of the State and its governor, Joe Manchin, III. In its motion, the State argues that the plaintiff's claims fail as a matter of law based upon, *inter alia*, the doctrines of sovereign immunity and separation of powers. ([Doc. 9] at 3, 4-5).

On June 24, 2010, the plaintiff filed a Motion to Proceed [Doc. 20], requesting that this matter be allowed to proceed to a scheduling conference.

## **DISCUSSION**

**I.     Applicable Standards**

    **A.     Rule 12(b)(1)**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

**B.    Rule 12(b)(6)**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted).  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

However, as this case involves a *pro se* plaintiff, this Court will only dismiss this matter if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ***Haines v. Kerner***, 404 U.S. 519 (1972).

5

## II. Analysis

### A. The Plaintiff's Requests for Monetary Relief

In its motion, the State of West Virginia argues that this Court lacks subject matter jurisdiction insofar as the plaintiff seeks monetary damages in the amount of one billion dollars from the State. For the reasons that follow, this Court agrees.

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens. **Hans v. Louisiana**, 134 U.S. 1 (1890). Thus, as a general proposition, the doctrine of sovereign immunity bars suit against a state. However, the Supreme Court has articulated three narrow exceptions. First, a state can waive its immunity. *See* **Atascadero State Hosp. v. Scanlon**, 473 U.S. 234, 238 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). Second, Congress may, in particular circumstances, abrogate a state's immunity. *See* **Fitzpatrick v. Bitzer**, 427 U.S. 445 (1976) (holding that Congress can make states liable to suit in federal court pursuant to statutes adopted under § 5 of the Fourteenth Amendment). Third, a suit may proceed against a state as long as it is directed at a state official and requests prospective relief. *See* **Ex parte Young**, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law).

In the instant case, there is no question that the abrogation and **Ex parte Young** exceptions are inapplicable to save the plaintiff's claims against the State of West Virginia.

6

First, due to an insufficient indication of an express congressional desire to make state governments liable under 42 U.S.C. § 1983, the Supreme Court has held that section 1983 does not abrogate Eleventh Amendment immunity.  See *Quern v. Jordan*, 440 U.S. 332 (1979).  Second, to the extent that the plaintiff seeks compensatory and punitive damages as his monetary relief, *Ex parte Young* is inapplicable.  See *Edelman v. Jordan*, 415 U.S. 651 (1974) (holding that the Eleventh Amendment prevents a federal court from awarding damages to compensate past injuries when those damages will be paid by the state treasury).

The waiver exception requires a more extended analysis, yet is similarly unavailable to the plaintiff.  As explained above, a state may waive its sovereign immunity and consent to suit in federal court.  Such consent must be expressly and unequivocally made.  *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).  By state statute, the State of West Virginia has waived its sovereign immunity and consented to suit in *state court* to the extent it has authorized the State Board of Risk and Insurance Management to procure liability insurance providing coverage of all State "property, activities and responsibilities."  See W.Va. Code § 29-12-5(a).  Thus, the State may be sued in state court as long as recovery is sought under and up to the limits of the State's liability insurance coverage.  See *Arnold Agency v. West Virginia Lottery Commission*, 206 W.Va. 583, 526 S.E.2d 814 (1999); *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1997); *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983).  Here, however, the plaintiff has sued the State of West Virginia and Governor Joe Manchin, III, in *federal* court, where

7

the State has not consented to be sued. Under these circumstances, the immunity provided by the Eleventh Amendment remains intact as a bar to suing the State of West Virginia in the federal forum. *See* ***Atascadero State Hosp. v. Scanlon***, 473 U.S. 234, 241 (1985) ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment."). Accordingly, insofar as the plaintiff requests monetary relief from the State of West Virginia, or Governor Joe Manchin, III, said claims should be **DISMISSED WITHOUT PREJUDICE**.

  **B.**  **The Plaintiff's Requests for Injunctive Relief**

In his Complaint, the plaintiff asks the Court to order injunctive relief against the State and its governor, including: (1) ordering the governor of the State of West Virginia, and the State's legislature, to "implement an immediate review of all agencies, bureaus, and commissions, with regard to redefining their proper role in providing services to its citizens . . .."; and (2) ordering the State of West Virginia to "review and abandon all contracts made with any group, union, church, or any other institution, corporation, or individual, to the detriment of the citizens of the state of West Virginia through any collective bargaining agreements, or any contracts made without regard to open bidding process . . .." ([Doc. 1] at 5-6). For the reasons that follow, this Court cannot grant the injunctive relief requested.

Each of the plaintiff's requests for injunctive relief takes the form of a generalized grievance for which the plaintiff lacks standing to sue. In ***United States v. Richardson***, 418 U.S. 166 (1974), the plaintiff claimed that the statutes providing for the secrecy of the

Central Intelligence Agency budget violated the Constitution's requirement for a regular statement and accounting of all expenditures. The Supreme Court of the United States ruled that the plaintiff lacked standing because his case presented a generalized grievance, i.e., the plaintiff did not allege a violation of a personal constitutional right, but instead claimed injury only as a citizen and taxpayer. More specifically, the Court held that the plaintiff lacked standing because he was "seeking to employ a federal court as a forum in which to air his generalized grievances about the conduct of the government." *Id.* at 175 (citations omitted). Here, like in **Richardson**, the plaintiff does not allege a violation of a personal constitutional right, but instead appears to claim injury only as a citizen and taxpayer. Similarly, the plaintiff seeks to use this Court "as a forum in which to air his generalized grievances about the conduct of the government" of West Virginia. As such, the plaintiff lacks standing. Accordingly, insofar as the plaintiff requests injunctive relief from the State of West Virginia, or Governor Joe Manchin, III, said claims should be **DISMISSED WITHOUT PREJUDICE**.

    **C.**    **Defendant Summit Investment Group**

In his Complaint, the plaintiff also names Summit Investment Group as a defendant. On June 3, 2010, the plaintiff returned the Summons executed for 300N LLC, which is apparently the entity the plaintiff attempted to identify when he instead named Summit Investment Group [Doc. 12]. However, for the reasons that follow, the plaintiff has failed to allege sufficient facts to support subject matter jurisdiction for a claim against 300N LLC (or Summit Investment Group).

Subject matter jurisdiction for a federal district court can be based upon diversity

9

jurisdiction or federal question jurisdiction. A district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. In this regard, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .." 28 U.S.C. § 1332(c)(1). Further, a federal district court has federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The party seeking to invoke federal court jurisdiction must allege its existence and, if there is a dispute, that party has the burden of proof. See **Maryland Stadium Authority v. Ellerbe Becket Incorporated**, 407 F.3d 255, 260 (4th Cir. 2005).

In the instant case, the plaintiff alleges that he executed a contract with 300N LLC for the purchase of real property in Tucker County, West Virginia. ([Doc. 1] at ¶ 37). The plaintiff, a West Virginia citizen, requests that this Court "stay the terms of the contract until such time as [he] is reasonable able to obtain funds and instruction to carry out the project." (Id. at ¶ 41). However, the Business Organization Information System on the West Virginia Secretary of State's website indicates that 300N LLC's charter type is domestic, meaning that the entity was incorporated in West Virginia. Thus, diversity jurisdiction is unavailable as a basis for subject matter jurisdiction. Moreover, the plaintiff does not allege that 300N LLC has violated federal law, and thus, federal question jurisdiction is also unavailable. As such, the plaintiff has failed to allege the existence of subject matter jurisdiction over his claim against 300N LLC (or Summit Investment Group). Accordingly, insofar as the plaintiff requests monetary or injunctive relief against 300N LLC (or Summit Investment Group),

said claims should be **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant State of West Virginia's Motion to Dismiss **[Doc. 9]** should be, and hereby is, **GRANTED**. Moreover, the plaintiff's claims against Summit Investment Group should be **DISMISSED WITHOUT PREJUDICE**. As such, the plaintiff's Motion to Proceed **[Doc. 15]** should be, and hereby is, **DENIED**. Accordingly, the Complaint **[Doc. 1]** should be, and hereby is, **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and to mail a certified copy to the *pro se* plaintiff.

**DATED**: August 4, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE